CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 9 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRENDA DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:07CV00069-00 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHEM HEALTH PLANS OF | ) | MEMORANDUM OPINION |
| VIRGINIA, INC. | ) | |
| | ) | |
| Defendant. | ) | By: The Honorable James C. Turk |
| | ) | Senior United States District Judge |

This case is before the court on cross motions for summary judgment filed by the plaintiff, Brenda Dillon and the defendant, Anthem Plans of Virginia ("Anthem"). At issue is whether Anthem's decision to deny coverage for medical expenses was supported by substantial evidence. The employee health insurance policy is governed by the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 et seq.

The court has considered the evidence and for the following reasons, the court finds that Anthem's decision to deny health insurance benefits was supported by substantial evidence. Accordingly, the plaintiff's Motion for Summary Judgment will be denied and the defendant's Motion for Summary Judgment will be granted..

I.

On August 25, 2006, Dillon underwent an abdominoplasty procedure which is commonly referred to as a "tummy tuck." (Administrative Record [" R."] at 121). On August 31, 2006, Dillon fainted in her home and was transported to Carilion Roanoke Memorial Hospital where she was hospitalized and received treatment until September 8, 2006. (R. at 121). Dillon suffered deep-vein

thrombosis ("DVT") and a pulmonary embolus in her left lung. (R. at 121). She incurred $63,811.77 in medical expenses. (R. at 125-151).

Upon her arrival at the hospital, Dillon's primary surgeon, Dr. Barton A. Thomas examined her and noted in his consultation report on August 31, 2006 that Dillon "suffered a significant complication following abdominoplasty." (R. at 121, 301). On the same day, Dillon's treating physician, Dr. Krishan K. Tayal, described Dillon's medical condition as "pulmonary embolus after undergoing a cosmetic operation for tummy tuck." (R. at 352). Dillon's discharge report, prepared by attending physician Dr. William F. Ball on September 8, 2006, noted that Dillon's medical history included "a history of remote deep venous thromboplhebitis in the right lower extremity." (R. at 249)

On or about September 1, 2006, Dillon submitted to Anthem, her insurer, a claim for coverage related to her treatment for DVT and pulmonary embolism. (R. at 177). In a letter dated September 1, 2006, Anthem informed Dillon that her medical expenses would not be covered by her insurance policy. Pl.'s Mem., Ex. A.. As stated in the letter:

> We are unable to approve coverage because as written in the Standard Exclusions of your health care policy, your coverage does not include benefits for care of obesity or services related to weight loss or dietary control, including complications that directly result from such surgeries and/or procedures . . . Our review indicated that you underwent a cosmetic abdominoplasty six days ago which was a non-covered service. The blood clots are considered a complication of the cosmetic surgery and therefore are not a covered condition.

Pl.'s Mem., Ex. A. Anthem informed Dillon that she had the right to request an appeal of its decision.

Dr. Thomas contacted Dr. Clinton Clapp, an Anthem physician, by phone on September 7, 2006. (R. at 179). During their conversation, Dr. Thomas informed Dr. Clapp that Dillon had a

genetic abnormality which results in a hypercoagulable state. (R. at 179). Despite Dr. Thomas' previous opinion that Dillon suffered a "significant complication following abdominoplasty," he offered the possibility that Dillon's DVT could occur "at any time and may not be related to cosmetic surgery." (R. at 121, 179, 301). Dr. Clapp opined that complications such as DVT are associated with surgery within thirty days following a procedure. (R. at 179).

On September 11, 2006, Dillon contacted Anthem by telephone and requested a formal appeal of its decision to deny coverage. (R. at 180). In connection with the appeal, Anthem requested all of plaintiff's medical records from Carilion Roanoke Memorial Hospital. (R. at 181). On September 29, 2006, Dr. Ball drafted a letter on behalf of Dillon stating:

> Brenda Dillon is a patient that has a remote history of DVT and a recent history of DVT with massive pulmonary emboli. This is directly related to her leiden deficiency. She is at constant risk for forming additional DVT's. This condition is totally unrelated to her gastric bypass, her abdominoplasty or any other surgical procedure.

(R. at 204).[1]

On October 23, 2006, Dr. Mae. E. Terrebonne, a reviewing physician for Anthem, informed Dillon via letter that her appeal for medical coverage was denied. (R. at 484). In her letter, Dr. Terrebonne stated:

> Our medical management staff, along with a medical director whose speciality is pediatrics, has considered all of the pertinent documentation relating to your appeal, including documentation from Carilion Medical Center and William F. Ball, M.D. Based on their review, it was determined that we are unable to change our previous coverage decision. Deep vein thrombosis is a known complication of surgical procedures up to thirty days after the procedure. You had a

---

[1] A leiden deficiency is a genetic condition which results in a predisposition for blood clotting. See e.g., Brian S. Donahue, M.D. Ph.D., Factor V. Leiden and Perioperative Risk, Anesth Analg 2004; 98:1623-34.

3

> cosmetic procedure and developed a complication within one week after procedure. Therefore, this complication is considered the result of a non-covered cosmetic procedure. Contractually, complications of cosmetic procedures are non-covered under your health benefit plan.

(R. at 484).

On or about January 10, 2007, Dillon filed suit in the United States District Court for the Western District of Virginia. She seeks $63,811.77 in medical expenses based upon her hospitalization from August 31, 2006 to September 8, 2006 for DVT and pulmonary embolism. Dillon filed for summary judgment on July 3, 2007. Anthem filed a motion for summary judgment and filed a brief in opposition to Dillon's motion on August 3, 2007. Oral arguments were heard before the court on November 16, 2007.

## II.

It is well-established that a court reviewing the denial of disability benefits under ERISA must initially decide whether the language of the benefit plan grants the plan administrator discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion. Gallagher v. Reliance Standard Life Insurance Co., 305 F.3d 264, 268 (4th Cir. 2002). The Supreme Court has stated in Firestone Tire & Rubber Co. v. Bruch, that in reviewing actions of a fiduciary that is given discretionary powers to determine benefit eligibility, deference must be shown and the fiduciary's actions will be reviewed only for abuse. 489 U.S. 101, 103 L. Ed.2d 80, 111 S. Ct. 948 (1989). If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, such as when the claim administrator is also the payer of benefits, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. Id. at 115.

4

The Fourth Circuit has modified the abuse of discretion standard to take account for any conflict of interest with the beneficiaries of such benefits if the administrator also pays the benefits at issue. This is commonly referred to as the modified abuse of discretion standard. See Martin v. Blue Cross & Blue Shield of Virginia, Inc., 115 F.3d 1201, 1206 (4th Cir. 1997); Doe, 3 F.3d at 87. A reviewing court, therefore, applies a sliding scale in a modified abuse of discretion standard, which gives less deference to an administrator's decisions laboring under a conflict of interest. See Ellis v. Metropolitan Life, 126 F.3d 228, 233 (4th Cir. 1997). In the instant matter, Anthem both administered the claims for health insurance benefits and paid the benefits. It is clear from the health insurance policy that Anthem retains the sole discretion to determine entitlement of benefits. (R. at 491). Furthermore, in oral arguments held on November 16, 2007 before this court, counsel for Dillon conceded that the modified abuse of discretion is the proper standard of review in the instant matter. The court shall review Anthem's decision to deny benefits to Dillon pursuant to the modified abuse of discretion standard.

### III.

The abdominoplasty that Dillon underwent on August 25, 2007 was a cosmetic surgical procedure. The insurance policy at the heart of this case specifically excludes extending benefits "for or related to cosmetic surgery or procedures, including complications that result from such surgeries and/or procedures." (R. at 40). Anthem maintains that the DVT and pulmonary thrombosis are complications from the abdominoplasty and thus Dillon is not entitled to coverage under the policy. This discretionary decision must be supported by substantial evidence.

Anthem argues that this threshold is reached due to the determinations of Dillon's treating physicians. Anthem relies upon the statement of Dillon's cosmetic surgeon, Dr. Thomas, who,

shortly after Dillon's arrival at the hospital on August 31, 2006, opined in a brief report that "[t]his is a very unfortunate forty-two year-old female who suffered a significant complication following abdominoplasty." (R. at 121). Dillon, however points out that while Dr. Thomas initially considered the DVT and pulmonary embolus to be complications of the abdominoplasty, he later changed his position during his phone conversation with Anthem physician Dr. Clapp. On September 7, 2006, Dr. Thomas stated that the DVT "could occur at any time and may not be related to cosmetic surgery." (R. at 179). Anthem regards this subsequent re-analysis by Dr. Thomas as an alternative hypothesis created after Dillon's claim for benefits had been denied.

While the statements of Dr. Thomas do conflict, the ultimate effect of each statement does not serve to negate the other. In his first statement, Dr. Thomas maintained that Dillon's injuries were complications from the cosmetic surgery. In his second statement, Dr. Thomas surmises that the DVT and pulmonary embolus might have been complications from the cosmetic surgery, but there is a *possibility that the injuries might not* be related to the cosmetic surgery. Thus, his second statement only served to lessen the certainty of the first.

Anthem also highlights the statement of Dr. Tayal as proving the existence of a cause and effect relationship between the abdominoplasty and the DVT and pulmonary embolus. On August 31, 2006, Dr. Tayal stated that Dillon suffered from a "pulmonary embolus after undergoing a cosmetic operation for tummy tuck" (R. at 352). While the onset of the DVT and pulmonary embolus did occur within a week of the abdominoplasty, neither the chronological sequence of the events nor Dr. Tayal's statement reflecting this temporal order are sufficient, by themselves, to evince a cause and effect relationship. However, when weighed with the other statements, Dr. Tayal's statement clearly does not oppose Anthem's position to deny coverage.

Finally Anthem argues that the opinions of Anthem physicians Dr. Clapp and Dr. Terrebonne should "not be gratuitously disparaged." Def.'s Mem. at 15. Both Dr. Clapp and Dr. Terrebonne reviewed the claim, the record, and Dr. Clapp performed peer-to-peer interviews with Dillon's treating physicians. (R. at 178, 179, 181). This court does not disparage the opinions of Dr. Clapp and Dr. Terrebonne, but weighs them accordingly under the modified abuse of discretion standard.

Dillon contends that Dr. Ball's letter of September 29, 2006 asserts the conclusion that Dillon's DVT and pulmonary embolus were the result of her leiden deficiency and as such, were not complications of the abdominoplasty. Conversely, Anthem argues that the sentence, "[t]his condition is totally unrelated to her gastric bypass, her abdominoplasty, or any other surgical procedure," refers to Dillon's leiden deficiency and that it does not refer to the DVT nor the pulmonary embolus that occurred after the abdominoplasty. (R. at 204). The term "condition," as used by Dr. Ball is ambiguous. But even if this ambiguity within Dr. Ball's letter was construed in a light favorable to Dillon, sufficient evidence remains to support Anthem's denial of Dillon's claim.

Aside from the ambiguous use of the word "condition," Dr. Ball makes two independent claims: (1) Dillon's history of DVTs are related to her leiden deficiency; and (2) her leiden deficiency puts her at an increased risk for forming additional DVTs. Although these claims both support the conclusion that Dillon is more susceptible to DVTs than the average patient, they do not directly support the argument that Dillon's DVT and pulmonary embolus suffered on August 31, 2006 were ailments occurring independent of the abdominoplasty and not complications of the cosmetic surgery. DVTs are a frequent complication of surgical procedures. As counsel for Dillon pointed out in her argument before the court on November 16, 2007, patients are often required to wear venous sequential boots after surgical procedures to help prevent the onset of DVTs.

7

The Fourth Circuit held that "it is not an abuse of discretion for an administrator to come to one decision, rather than another, where there is conflicting medical evidence in the record." Hung v. Guardian Life Ins. Co., 2000 U.S. App. LEXIS 18970, *13 (4th Cir. August 7, 2000) citing Elliot v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999). Furthermore, it is not an abuse of discretion for the claim administrator to deny a claim based upon the opinions of the administrator physicians despite the fact that those opinions conflicted with the treating physicians' opinions. Booth v. Wal-Mart Stores Inc., 201 F.3d 335 (4th Cir. 2000). In the instant matter, the treating physicians have either agreed with the opinions of the Anthem physicians, differed with the Anthem physicians regarding the *possibility* of alternative reasons for the DVT and the pulmonary embolus, or made statements that are ambiguous or cannot truly be determinative of a cause and effect relationship between the abdominoplasty and the subsequent injuries.

Anthem's decision to deny coverage was the result of a deliberate, principled reasoning process and it is supported by substantial evidence. Plaintiff's Motion for Summary Judgment will be denied. Defendant's Motion for Summary Judgement will be granted.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to counsel of record for both the plaintiff and the defendant. The Clerk is further directed to remove this case from the Court's active docket.

ENTER: This 29th day of November, 2007.

*/s/ James C. Turk*
The Honorable James C. Turk
Senior United States District Judge